UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-2940-SG

UNITED STATES OF AMERICA

vs.

ALBERTO RODRIGUEZ,

      Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __x__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __x__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Aileen M. Cannon
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0101484
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9002
FAX (305) 530-7976

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ALBERTO RODRIGUEZ | ) | Case No. 14-2940-JG |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 13, 2014 - August 4, 2014__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846; | did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, namely, cocaine, in violation of Title 21, United States Code, Section 846. |
| Title 21, United States Code, Section 841(a)(1). | did knowingly and intentionally possess with intent to distribute a controlled substance, namely, cocaine, in violation of Title 21, United States Code, Section 841(a)(1). |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Brian Wade, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 08/05/2014

_____
Judge's signature

City and state: Miami, Florida

Hon. Jonathan Goodman, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian Thomas Wade, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been so employed since April 2012.

2. I am assigned currently to the FBI, Miami Division, Homestead Resident Agency in Homestead, Florida. In this role, I investigate narcotics violations, crimes against children, and bank robberies.

3. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

4. During my law enforcement career, I have participated in the execution of multiple arrests and search warrants in narcotics cases. I have received specialized training and experience in narcotics smuggling and distribution, including, but not limited to, the means and methods used by drug traffickers to import and distribute narcotics, interdiction, smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have participated in all aspects of narcotics investigations, including debriefings of multiple defendants, informants, and witnesses with personal knowledge of narcotics trafficking organizations.

5. The facts in this affidavit are based on my personal knowledge, information provided by other law enforcement officers, and information provided by witnesses, documents, and the sources described herein. Because this affidavit is being submitted for the limited purpose of establishing

probable cause that defendant ALBERTO RODRIGUEZ (RODRIGUEZ) committed the offenses set forth in the attached complaint, it does not include each and every fact known to law enforcement concerning this investigation.

## PROBABLE CAUSE

6. Towards the end of May 2014, a cooperating source ("CS") told law enforcement authorities that a Cuban male known to him as "Coco," later determined to be RODRIGUEZ, was distributing cocaine in the Miami/Homestead area. The CS further advised that he knew about "Coco's" drug-trafficking activities, because he/she (the CS) had purchased kilogram-quantities of cocaine from "Coco" at "Coco's" residence, for a period of approximately twelve to fourteen months—with the last purchase occurring in or around the last week of April 2014 or the first week of May 2014.

7. Based on information provided by the CS, law enforcement identified RODRIGUEZ's home as a property located at 16600 S.W. 174th Avenue, in Homestead, Florida.

8. On July 13, 2014, at the direction of law enforcement, the CS placed a consensually monitored phone call to RODRIGUEZ, aka "Coco." In a coded conversation in Spanish, RODRIGUEZ explained to the CS that the "old man mechanic" was sick, but that he would be here around July 18 or 19, 2014. The CS understood "here" to be RODRIGUEZ's home, which is where RODRIGUEZ has sold cocaine to the CS on all prior occasions.

9. On July 18, 2014, at the direction of law enforcement, the CS placed a consensually monitored phone call to RODRIGUEZ. In a coded conversation in Spanish, RODRIGUEZ told the CS that there would be "shoes" of different sizes coming and asked the CS if he was going to need one or two boxes. The CS inquired about the quality of the shoes, and RODRIGUEZ said they were

2

"Nike" and "Michael Jordan's," implying that the narcotics were of good quality. RODRIGUEZ further stated that the price was "three four" for a box, referring to $34,000 per kilogram of cocaine. RODRIGUEZ also asked the CS how many "boxes" he wanted, and after a brief conversation, RODRIGUEZ stated that he would set aside two boxes for the CS, referring to two kilograms of cocaine.

10. On July 20, 2014, RODRIGUEZ called the CS, who did not answer. The CS then placed a consensually monitored phone call to RODRIGUEZ to check on the status of the two kilograms of cocaine. RODRIGUEZ advised the CS in code that the man had a problem with the truck, and that the shipment had been delayed.

11. In another recorded call on July 24, 2014, RODRIGUEZ told the CS to wait until the following week, which was the week of July 28, 2014.

12. On July 31, 2014, U.S. Magistrate Judge Edwin G. Torres authorized an anticipatory search and seizure warrant of RODRIGUEZ's home. The triggering event for that search warrant was law enforcement learning from the CS that cocaine was present within RODRIGUEZ's home and/or the CS hearing directly from RODRIGUEZ that cocaine was present inside RODRIGUEZ's home.

13. On August 3, 2014, after several other recorded calls to coordinate the two-kilogram transaction of cocaine, RODRIGUEZ called the CS and told the CS to be ready the next day, August 4, 2014.

14. The next day, August 4, 2014, RODRIGUEZ called the CS and told the CS that the parts were ready to be picked up. RODRIGUEZ instructed the CS to come pick them up and placed multiple phone calls to the CS throughout the day inquiring about the CS's arrival time.

15. Later on August 4, 2014, the CS met with RODRIGUEZ at RODRIGUEZ's home. The meeting was audio and video recorded, and law enforcement was receiving a live audio transmission. During the meeting, RODRIGUEZ directed the CS to the rear of the property by a pavilion area. RODRIGUEZ then brought 2 kilograms of suspected cocaine out from where he stored them and showed the CS the 2 kilograms of suspected cocaine. The CS explained that he/she was able to get enough money for only 1 kilogram of cocaine, not 2 kilograms of cocaine. RODRIGUEZ then agreed to sell the CS 1 kilogram of suspected cocaine, with the understanding that the CS would return later in the evening to purchase the 1 remaining kilogram of cocaine. The CS then gave RODRIGUEZ $34,800 for 1 kilogram of cocaine and departed RODRIGUEZ's residence with the 1 kilogram of cocaine.

16. After the CS left RODRIGUEZ's residence, the CS confirmed to law enforcement that he received 1 kilogram of cocaine from RODRIGUEZ, and that he had seen cocaine in the rear of RODRIGUEZ's property by a pavilion area. Law enforcement then executed a search of RODRIGUEZ's residence pursuant to the previously issued anticipatory search warrant.

17. During the search warrant, law enforcement seized multiple items of evidence from RODRIGUEZ's residence, including 1 kilogram of suspected cocaine, $31,750 in United States currency (in addition to $34,000 in pre-recorded, FBI-authorized buy money that was used for the transaction), and multiple items of drug paraphernalia.

18. In a post-*Miranda* statement, RODRIGUEZ confessed to receiving 2 kilograms of cocaine from an unidentified supplier earlier in the day. He also admitted to (1) setting up the cocaine transaction prior to the CS's arrival that day; (2) possessing the 2 kilograms of cocaine in order to

sell them to the CS that day, August 4, 2014; and (3) selling the CS 1 kilogram of cocaine for $34,000.

19. Based on the foregoing facts, I submit that there is probable cause to believe that RODRIGUEZ knowingly conspired to distribute cocaine, in violation of 21 U.S.C. § 846, and knowingly possessed with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

20. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

FURTHER YOUR AFFIANT SAYETH NOT.

BRIAN THOMAS WADE, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed
before me this ___ day of August 2014.

JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE